May it please the Court and Counsel, I'm Bear Wilner, Nugent for James Duckett. I'd like to focus on the sentencing issues today, though I'm certainly happy to discuss any of the issues. And I'll start with the jury's verdict on drug quantity. If we don't respect this verdict, I think the question is, why do we respect any jury's verdict? And the government doesn't, in its brief argument on this point, even try to enunciate a principle that could direct courts in understanding when verdicts are or not constitutionally significant. The principle is a principle that has been criticized, but is the principle, which is that a judge, since the findings of fact on sentencing are by a preponderance rather than beyond a reasonable doubt, that the judge can actually find, even if the defendant has been acquitted, for example, on an offense, the judge can rely on it for related conduct, right? That's the principle, isn't it? I think the principle under the Supreme Court's most recent two decades of case law is a little different than that, and that might be how the principle used to be when you had it. Well, still, that case has never been overruled. Now, I think where you're going is with the Pimentel-Lopez case. But the distinction here, it seems to me, is that there are two separate crimes of which the jury convicted your client. And there's nothing in Pimentel that says you can't add together the quantities from two different crimes. And nor is there anything in the verdict here that says that the quantities for sure overlapped. So you had just under 3 kilos, I think, in the garage, if I'm not mistaken. You're correct. And then it was permissible to find more than 2 kilos in the conspiracy count. So why couldn't the judge just simply add those together and be done with it? The jury said there was less than 5 kilos in the conspiracy count. Right. And the conspiracy count, there's no evidence to show that the conspiracy count did not include the garage conduct. And, in fact, the way the case was found. But there's no verdict that says that it is included either. I mean, that's why I'm saying where there's that kind of ambiguity. I mean, Pimentel was based on the idea that the jury made a specific finding that the sentencing judge had to respect. Right or wrong, that's the rule that we have in that context. But that dealt with a single count. And I guess I still am not clear on why they couldn't take the slightly under 3 kilos and more than 2 and add it together. Because the court's sentence on count 1 incorporated a finding that there was more than 5 kilos contradicting the verdict on count 1. So it was the same count that was at issue, first of all, I think is the mistake here. Secondly, there was no other cocaine that was, you know, in its original brick form or any other quantity to speak of. The rest of the cocaine that was used by the district court to reconstruct the greater than 5-kilogram quantity. Was from the conspiracy. Well, it was inferentially found.  Well, but that's permissible. If you're not running afoul of Pimentel, there's nothing wrong with that, is there? I think you're running afoul still of the principles that undergird Pimentel. I mean, imagine a case where the facts are clear, a different kind of criminal case. The facts are clear that they're a criminal homicide, but they're ambiguous as the defendant's mens rea. So a homicide could have been committed intentionally, recklessly, or with criminal negligence. The jury finds that the homicide was committed with recklessness, but the judge sentences the defendant for murder instead of manslaughter. Well, but this is nothing like that. This has to do with drug quantity, not state of mind. So the drug quantity for conspiracy doesn't have to be drugs that are in actual possession of the defendant, right? But if the judge. Is that yes or no? Correct. Okay. So the fact that there's consideration of potentially more than the amount that is in possession, I don't see how that's an error. It's an error only when the government asks the jury to find specific quantity ranges, and the jury specifically acquits the defendant of the greater quantity range. And that's why I was using the example. The question is whether he acquitted. Let's assume that that Pimentel-Lopez applies to count one. Yes. All right. Now we're in count two, which is the conspiracy count, right? Because count two is the possession with intent, Your Honor. All right. Count one is conspiracy. I see. All right. So let's take. So they would have to possess more than 500. And the way the possession with intent count is alleged in the indictment I think matters, too, because it alleges honor about a particular day, the day of the bust, as opposed to the continuing offense of the conspiracy. So the jury is being asked to make a finding not only with regard to a different quantity boundary, but with regard to a different time period. And I think that's constitutionally significant as well. And you can't use the vague label of relevant conduct. And in drug cases, relevant conduct really means drug quantity after all. They could be interchanged, I argue. But you can't use that label to stretch relevant conduct from one count that's alleged to have occurred on or about a given day into a much longer period of time. And, in fact, the jury's finding on the two counts is consistent. If you frame it in terms not only of the pleading but of the government's argument and the defense argument at trial, I think everyone in the jury knew perfectly well that the government was arguing that the quantity of cocaine possessed with regard to count two was precisely the amount found in Ms. Robinson's garage rafters, not more, not less. And that's why the party's arguments at sentencing regarding relevant conduct were developed with regard to the evidence undergirding count one. And the government is very cursory in its treatment of those facts, but I think they're constitutionally significant. Well, I mean, one other oddity here is that it's never really clear who was in the conspiracy. That's true. And that's part of the reason that we argued for the judgment of bailiff and grounds. And, therefore, it could be that the jury thought the conspiracy didn't involve Robinson. So the possession claim was with regard to the money in Robinson's garage but wasn't part of the conspiracy. And then the conspiracy claim was other things having to do with Ramsey. Is that a possibility? It's certainly a possibility. I don't think that's exactly what the government argued, but that's a possibility. All right. So, therefore, the conspiracy finding could leave out sensibly the amount found in the garage. But this is what happened. Well, that leads us to some speculation, I would think. Well, of course it's speculation. But ordinarily we look at jury verdicts, you know, to make them enforceable rather than non-enforceable. Well, the rule of law that I think should come out of this case is that if the jury says there was not more than 5 kilograms involved, the court must sentence the defendant as though there was not more than 5 kilograms involved. That's clear. It's enforceable across a variety of contexts. Well, but do you read the – to do that, you'd have to say that – I mean, the judge certainly didn't make this distinction, i.e., between the verdicts, between the counts. So you must be saying that we cannot read the judge as having – we have to understand him as having looked at the over 5 kilograms globally and not separately for each count. In fact, the court very specifically included the 3 kilograms and the 5 kilograms, and I'm glad to clear up the record on that point. If you look at the portion of the sentencing colloquy cited in our opening brief, he starts with those 3 and then adds – finds the capacity to reconstruct 2 more inferentially through the other evidence. What about – you're not really challenging the inferential attribution of the 2 more, right? No, I'm challenging the role, the way in which the district judge exercised – I know, but I'm asking you – I mean, where he got the 2 more from, or the more than 2 more, was from, well, one wrapper that had Camaro on it and some money, right? Right. He said that there was enough money found taking out the money that might have been used for cash in the used car business. There was still enough money found to have sold a brick of cocaine. But that I don't understand, because if you found an empty brick that could have – That's certainly true, and that's why it's better to make things simpler by having a rule of law that relieves this to the jury, at least when the jury is asked to perform this task, because a narrower rule would say only in cases where the government has a special quantity finding that it made, which it requested, which it did request in this case, the government can't then later disavow its request for the special quantity finding because it missed the answer. There is a difference between the articulation of the special verdict here and in Pimentel-Lopez. I'm not sure that the 2 counts is a difference, because my understanding is there were 2 counts in Pimentel-Lopez. But the difference is that – and what the opinion stressed is that it said you had to find this beyond a reasonable doubt. But this rule, this verdict doesn't say we, the jury, haven't found it beyond a reasonable doubt. It says having found it guilty, we further find whatever. But it doesn't internally articulate the beyond a reasonable doubt statement. I think read in context with the jury instructions, it would be very clear to the jury that they had to find that fact beyond a reasonable doubt. And I think if you asked any of the litigants at the time of submission of the verdict to the jury, of the case to the jury, they would have agreed. I don't see there's any record developed on behalf of the government that would permit it to argue differently with regard to the verdict as opposed to the court's fact-finding. Of course, if the court can find the additional facts, it can find them by preponderance. We're not arguing anything different in that regard. We're simply arguing that fact-finding, whatever you call fact-finding, using the label relevant conduct to label fact-finding doesn't make it constitutionally less significant fact-finding. And that's the core principle that comes out of all of the Supreme Court's work on this issue over the last 20 years, going back before Apprendi to Jones v. United States from that point forward 20 years ago. And I think that's the most important issue here in the case, obviously. I think also that the government misapprehends the preservation principles or for some reason incorrectly cites the standard of review that applies to these sentencing claims. And I would just like to note in passing that the standard of review here is not for clear error with regard to our third claim, with regard to the drug quantity finding claim, as the government asserts in its brief at page 9. But instead, because this is a constitutional challenge to a sentencing, this should be reviewed de novo. I think that's a very significant procedural point. And finally, I want to reserve three minutes for rebuttal, but just in the last few seconds I have before those three minutes, I want to point out that we're still bringing the argument, we still would like the court to reverse on the leadership enhancement role issue, because this was not a case in which this conspiracy was extensive or which the government argued that there were really more than five participants involved, five or more participants involved. But instead, this was a case in which the only exercise of control, arguably, was an attempt to, if you will, witness tamper, to tell Ms. Robinson not to talk to the police. And control during a cover-up doesn't mean the same thing as control during a conspiracy. But with those remarks, I'd like to reserve the balance of my time for rebuttal. You may do that. Thank you. We'll hear from the government. May it please the Court, Kelly Zusman, appearing on behalf of the United States. The counts in this case, well, first off, I want to start off by correcting a couple of things that my opponent said. One is that the district court did not make a drug quantity finding as to count one specifically. Paragraph 36 of the pre-sentence report grouped both of those offenses. So Judge Mossman's drug quantity findings were for the entire offense, both counts. They combined both. The second is the notion that count two was somehow limited to a single day. Although count two did allege that Mr. Duckett and Ms. Robinson possessed with the intent to distribute the three kilograms of cocaine that were found in her garage, we know from this Court's decision in United States v. Sanchez that relevant conduct can include other transactions as well. Its similarity, regularity, temporal proximity, all of that would encompass everything that Judge Mossman considered. Ultimately, though, I think where this case breaks down with Pimentel-Lopez is that Pimentel-Lopez simply did not involve a case that had different jury findings on different counts. And the counts were charged differently. But there were two counts. I'm sorry? There were the same two counts. In Pimentel. Yes, there were two counts in Pimentel. What differences are they? The same jury finding as to quantity. The difference here is that we had two different counts with different allegations. The conspiracy count named both Mr. Duckett, Ms. Robinson, and Mr. Ramsey. Count two, by contrast, only named Mr. Duckett and Ms. Robinson. So it was different. It was different temporally. And, but more specifically, the difference between And the jury found different quantities. I'm sorry? The jury found different quantities. Yes. The jury found. Suggesting that it was looking at two different things. Well, they made different findings because the verdict form was drafted differently. They didn't find different amounts, though. They're completely consistent amounts. They are. And no contradiction there. What I think is significant, though, is that to the extent the defendant's arguing that this case is controlled by Pimentel-Lopez, it's really very different. In fact, Pimentel, at page 1142, this court held, any jury finding that does not set an upper boundary would leave the district court free to find a greater quantity. That's precisely what Judge Mossman did. Count two had no ceiling. So at the time of sentencing, he was permitted under the law to do precisely what he did, which is examine all of the drug quantity that was available in this case, including some of the evidence that the jury never heard. For example, there were 14. Let me just specify that because it says 500 or more. Correct. So that could be any amount more. Correct. According to the jury. Correct. According to the jury and according to this court's decision in Pimentel-Lopez. Did the prosecution urge the jury in this case to consider the two counts and underlying drug amounts all together? We didn't make a specific drug quantity. We never asked the jury to consider drug quantity separately for count one as opposed to count two. So they were asked to consider the drug quantity together, both counts, correct? I believe that's correct. So why isn't it true that the jury did simply consider both together in count one when they said it was less than five kilograms? The answer, Your Honor, is we don't know. We don't know how the jury broke this down because they were never asked to specify. We know from Judge Mossman's findings and from the pre-sentence report that we had a number of empty kilo cocaine wrappers that were found at Mr. Ramsey's house. We have the timing, which is Mr. Duckett would show up at Mr. Ramsey's house. He would leave briefly. He would come back. We would see a whole bunch of foot traffic. He would come back, and then two days later, in the trash, we would find an empty kilo wrapper that tested positive for cocaine. So the jury heard quite a bit of evidence about the traffic between Mr. Duckett, the house where he mixed his drugs, Mr. Ramsey's residence, the foot traffic, the return. Were the wrappers found in Mr. — Judge Mossman emphasized the one that had the Camaro wrapper, but then there were some others. Correct. Were those at Mr. Ramsey's house or were they at the other house? There were five total found at Mr. Ramsey's house. There was one empty wrapper found at Ms. Robinson's Saratoga residence. Okay. And those are all listed in paragraph 36 of the pre-sentence report. So ultimately, Your Honor, I think the facts — I mean, the one part of this that bothered me was the money because I don't understand how you can count the money in the wrapper spells. It seems to me they're redundant. And the government presented evidence at sentencing that Mr. Duckett had amassed at least $80,000 over the course of this eight-month investigation. Yes, but you also claim that he had six empty wrappers. So if he had six empty wrappers, that represents more than $80,000 worth of cocaine, as I understand it. Right, and I think Judge Mossman's reasoning was that $22,000 represented his proceeds. That was his profit. That was what he made after he had already paid for those cocaine packages. Even if he paid for it, you can't count the wrappers and the money because they're redundant, right? Judge Mossman found that the full $80,000 would be redundant. His reasoning was that the $22,000 was not because that was — Why does that even matter? Because isn't the question whether it's more than five kilograms or not? Correct. So once you get past one or two extra wrappers, whether he had five or six or three, the $80,000 or the $22,000 really plays no role in whether you can bump up above the five kilograms or not. That's absolutely correct. It's not pivotal at all. Except that Judge Mossman didn't seem that convinced about the wrappers other than the one with the Camaro. Once he got by that one, he seemed to be relying on some estimate that included the other wrappers and the money in a fairly amorphous estimate sort of way. He mentioned the other five wrappers, but he wasn't really relying on them directly as I understood it. More as some estimate along with the money. Well, and we need to look at the wrappers in context with the testimony at trial, which is the wrappers coincided with Mr. Duckett's visits to Mr. Ramsey's residence, all of the foot traffic, the apparent small transactions. So the fact that the — I think Judge Mossman picked out the fact that the Camaro wrapper that was found on Mr. Ramsey's porch, in fact, had the same Camaro logo as the three cues that were found in Ms. Robinson's garage. Nevertheless, the other wrappers were equally important and equally plausible because they were directly linked to Mr. Duckett's visits to Mr. Ramsey's residence and all of the increased foot traffic consistent with small drug transactions. And we know from the controlled buys that were conducted at Mr. Ramsey's house that formed the basis for the search warrants that Mr. Ramsey was, in fact, selling small quantities. He did so 14 times through controlled buys that we were monitoring. Unless the Court has further questions, our position is Pimentel-Lopez, although if, for example, we only had count one, Pimentel-Lopez would apply and would cap. But here we have count two. We have a jury finding that, in fact, this offense involved 500 grams or more. And so under Pimentel, Judge Mossman had the discretion to do precisely what he did here, which is to determine the actual drug quantity in this case by a preponderance of the evidence. And there's been no suggestion by the defense that, in fact, there was any factual problem with Judge Mossman's finding. It was simply the argument that Pimentel-Lopez should have — Precludes the finding from the — Correct. Right, and there's nothing contradictory here because of count two and the way that verdict form was worded. But you would think that the jury, if it followed the argument and the evidence in the case, would have then found more than five kilograms on count one, which is where they were instructed to consider both counts together. Well, it's certainly possible, again, because we don't have a specific finding. It's also possible that the jury looked at the fact that count one accused both Robinson, Ramsey, and Duckett, and that, in fact, it was not Mr. Ramsey who was involved in the three kilograms that were found in Ms. Robinson's garage. That's also equally plausible. I would note that the sentencing findings for Mr. Ramsey, he pleaded guilty, and the drug quantity computation that applied at his sentencing was between 300 and 500 grams. So he received a sentence of 24 months based upon that drug quantity finding. There are a number of other issues raised with the appeal. If the court has any questions, I'm happy to answer those. Otherwise, if there are no further questions, we would submit. I don't believe we do have any. Thank you. Thank you. And you have reserved some rebuttal time, so. Thank you, Your Honor. The grouping of counts for sentencing is a statutory procedure. It's not some kind of a backdoor to the Sixth Amendment guarantee of a jury trial. As to every fact that makes up an offense, or in the case of a drug offense with degrees, depending effectively upon drug quantity, makes up a greater degree of that offense. So why would the government ask for a five-kilogram finding? It's not a different offense, counsel. It's a different sentencing range, right? Well, I'm adopting a characterization that comes out in some of the earlier case law around Apprendi to say that effectively, and looking at, for example, cases like United States v. Buckland, which we cited in our brief, effectively, it is essentially an element of a greater degree. But ordinarily, ordinarily, sentencing factors or sentencing facts are found by a preponderance of the evidence, correct? Not when they expose the defendant to a greater sentence that would otherwise be permissible, which is precisely why the government is asking for it. But ordinarily, let's say in this case there were no upper limit. The jury had said 500 grams or more for everything. The judge would be free to consider the evidence under a preponderance standard, correct? Yes, Your Honor. Okay. And I will agree with counsel. The issue here is not the quality of judicial fact-finding or the quality of the facts that made that fact-finding possible. It's the procedure. It's the procedure because the court made fact-finding and derogation of the jury's verdict in direct contradiction to it, in contradiction to a verdict that was requested by a party and that the party is trying to run away from. And the finding that the drugs were not more than 5 kilograms is not superfluous somehow. And the question becomes, what could the government have gotten differently in sentencing had it gotten the finding that it initially requested, which was a finding of greater than 5 kilograms? Obviously, there has to be some reason that the government requests a special verdict with regard to drug quantity because the government understands the force of the case law that supports the target. By the way, why are the two forms different? I.e., why does the possession count not have the upper limit on it? Is there a reason in the statute? I don't have that fully in my head today, Your Honor. I don't really understand why the government made that request in the context of all we've been talking about here today. I'll be candid. I will say that the jury's verdict, I think, is pretty clear, is that the jury decided not to make the inferential leaps that the court did. The jury's verdict was consistent with finding 3 kilograms, as I think the court pointed out in questioning counsel just a few moments ago. And the 3 kilograms were the only, I would argue, amount of cocaine that could be found, beyond a reasonable doubt, on this factual record. The wrappers found at the street-level dealer's house, Mr. Ramsey's house, could have been from any number of drug dealers. Does it make any difference that the 500 or more count is the possession count? It does make a difference because that's alleged to cover a narrower time range, and I see that my own time is up. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both counsel. Our final case on this morning's docket is Western Watersheds Project v. Graham.
judges: Graber, Berzon, Tunheim